UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| WALTER J. QUEEN, et al., | ) | CASE NO. 5:16-cv-2262 |
| | ) | |
| PLAINTIFFS, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| HUNTER'S MANUFACTURING | ) | |
| COMPANY, INC., | ) | |
| | ) | |
| DEFENDANT. | ) | |

Before the Court is defendant's motion to dismiss or drop parties. (Doc. No. 10 ["Mot."].) Plaintiffs have filed their opposition (Doc. No. 11 ["Opp'n"]) and defendant has filed a reply (Doc. No. 12 ["Reply"]). For the reasons set forth herein, the motion to drop parties is granted, but the motion to dismiss is denied.

## I. BACKGROUND

On September 12, 2016, plaintiff Walter J. Queen ("Queen" or "original plaintiff") filed a complaint against defendant Hunter's Manufacturing Company, Inc. ("Hunter's" or "defendant") asserting diversity jurisdiction under 28 U.S.C. § 1332. The complaint (Doc. No. 1 ["Compl."]) alleges that Queen is a resident of Kentucky and defendant is a Nevada corporation with its principal place of business in Ohio; that the amount in controversy "exceeds $75,000.00, excluding interest and costs[;]" and that venue in this district is proper because "a substantial part of the events or omissions giving rise to [p]laintiff's claims occurred in this judicial district." (*Id.* ¶¶ 1-4.)

Queen alleged in his complaint that, in September 2015, he purchased a Titan Xtreme crossbow that defendant manufactured, marketed, and distributed (including its components). (*Id.* ¶¶ 15-16.) On or about September 26, 2015, while Queen was using the crossbow, "suddenly and

without warning, the string of the crossbow struck [his] left thumb, lacerated the thumb, broke the thumb bone, severed nerves and tendons, and caused severe damage thereto." (*Id.* ¶ 17.) The crossbow allegedly contained no thumb/finger guards when it was purchased. (*Id.* ¶ 18.) Queen alleged that, as a direct result of defendant's unreasonably dangerous product, he "has experienced extreme and excruciating pain and suffering, emotional distress and mental anguish, lost wages, substantial medical expenses, disfigurement, deformity, and scarring, for which he seeks damages, both past and future." (*Id.* ¶ 19.) Setting forth one count of strict product liability and one count of negligence, Queen sought actual and compensatory damages, exemplary/punitive damages, and pre- and post-judgment interest.

On October 6, 2016, defendant having not yet appeared, Queen filed a first amended complaint (Doc. No. 7 ["FAC"]), adding four more plaintiffs, each of whom alleged that on all different dates, using all different crossbow products allegedly manufactured by defendant and purchased on different dates, they suffered left thumb injuries similar to those suffered by Queen. In summary, the FAC alleges as to each new plaintiff:

| **Additional Plaintiff / Citizenship** | Purchase Date/Product | Date/Nature of Injury |
| --- | --- | --- |
| William Benigni Pennsylvania | Sept. 2009 – TenPoint Titan HLX | 10/30/15 – lacerated left thumb, broken thumb bone and nail, severed nerves |
| Larry W. Faust Jr. Michigan | Sept. 2014 – Wicked Ridge Warrior HL Crossbow | 10/9/14 – lacerated left thumb, broken thumbnail, severed nerves |
| Thomas Hanna Delaware | 2013 – Turbo XLT Crossbow | 11/8/15 – lacerated left thumb, broken and fragmented thumb bone, broken nail, severed nerves |
| Ronald Stidham Virginia | Unknown – Phantom Crossbow | 4/16/15 – severed portion of left thumb |

## II. DISCUSSION

Defendant moves to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1), asserting the plaintiffs cannot meet the amount-in-controversy requirement for diversity jurisdiction. Defendant further moves, under Fed. R. Civ. P. 21, to drop the claims of the four plaintiffs added by way of the FAC on the ground that they were misjoined.

### A. Misjoinder of Plaintiffs

Under Fed. R. Civ. P. 21, "[o]n motion or on its own, the court may at any time, on just terms, . . . drop a party . . . [or] sever any claim against a party." Although the rule does not define "misjoinder," Fed. R. Civ. P. 20(a)(1), addressing the requirements for permissive joinder, is instructive. It provides that "persons may join in one action as plaintiffs if: (A) they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all plaintiffs will arise in the action."

"The 'same transaction or occurrence' requirement is a flexible concept, but the ultimate determination is whether there are enough factual occurrences to ensure that joinder is fair. Mere factual similarity between claims is not enough to show that claims arise from the same transaction or occurrence." *Burgos v. Bob Evans Farms, Inc.*, Civil Action No. 2:11-55-DCR, 2011 WL 4528476, at *1 (E.D. Ky. Sept. 28, 2011) (internal quotation marks and citation omitted).

As correctly noted by defendant, the five plaintiffs' claims involve five different models of crossbows purchased over the course of six years. (Mot. at 62.)[1] Although the location of each

---

[1] All page number references are to the page identification number generated by the Court's electronic docketing system.

purchase is not alleged, it is likely that the crossbows were all purchased at different stores, given that the five plaintiffs reside in five different states. (*Id.* at 62-63.) There is no common transaction or occurrence linking the five plaintiffs and their crossbows. (*Id.* at 63.) Further, Ohio's choice of law rules might compel the Court to apply five different substantive laws to the plaintiffs' claims. (*Id.* at 64.)

In opposition to the motion, plaintiffs cite *Abraham v. Volkswagen of Am., Inc.*, 795 F.2d 238 (2d Cir. 1986), as support for their argument that they are properly joined because their claims involve a "core allegation" of "a common [design] defect" (i.e., lack of a thumb/finger guard on defendant's crossbows) that renders all their claims "logically related." (Opp'n at 141.) In *Abraham*, a class action brought under the Magnuson-Moss Act, plaintiffs all alleged that "the faulty valve stem seal" on their respective Volkswagen Rabbit cars (model years 1975-1979) failed to prevent oil from leaking into the engine's combustion chamber and was, therefore, "a single defect that caused the various damages[.]" *Abraham*, 795 F.2d at 251. The court found that the defective valve seal satisfied the "common transaction or occurrence" requirement, making the district court's denial of joinder an abuse of discretion. *Id.*

Although defendant does not address this case in its reply brief, the Court finds *Abraham* less than instructive because it was a *class* action and it involved an actual defective component part of an automobile (which, presumably, would not be affected by an individual driver's skill or technique), not, as here, an alleged *missing* component part of a product that requires particular skill and training to use. In *Abraham*, an identical seal in each car that was supposed to prevent leakage uniformly (*i.e.* "common[ly]") failed to do so and, therefore, constituted, at least arguably, a design defect. It cannot be assumed here that, just because each of the five crossbow models did not have a thumb/finger guard, such a guard was necessary for each crossbow or that the design

4

process was somehow negligent across the board with respect to each of the five different crossbow models, which appear to have been owned and used by each plaintiff for varying lengths of time before injury. Even though, to one unschooled in the use of a crossbow, a thumb/finger guard may seem like a good and necessary component, that would still remain a matter of proof with respect to each model of crossbow. This mere alleged factual similarity is insufficient to establish that joinder is warranted. *See Burgos*, *supra*. Nor is this conclusion altered by plaintiffs' assertion in the opposition brief that defendant currently sells a non-model-specific thumb/finger guard for all crossbow models, and that the thumb/finger guard now included on every new crossbow manufactured by defendant is virtually identical. The mere fact that guards are *available* and are now included on new models does not prove that they are *required* and that any given product is (or was) necessarily defective without them.

Additional cases from other jurisdictions cited by plaintiffs are similarly less than helpful.[2] More convincing to the Court is a ruling in a nearly identical situation, where a district court in Florida dismissed all but one of 36 plaintiffs who asserted claims for strict product liability, breach of warranty, and negligence, relating to injuries sustained while they used crossbows manufactured by Barnett Outdoors, LLC. Granting defendant's motion to sever, the district court found: "The allegations reveal that the accidents occurred on thirty-six different dates, spanning over four years, and while using eight different model crossbows, which were purchased on various dates over a span of at least five years from different retailers, and which contain different warnings and

---

[2] *In re Trasylol Prods. Liab. Lit.*, 754 F. Supp. 2d 1331 (S.D. Fla. 2010) was a multi-district litigation involving 99 persons residing in 31 different states who were all injured by a single allegedly defective medication manufactured by a single manufacturer; *Agnesini v. Doctor's Assoc., Inc.*, 275 F.R.D. 456 (S.D.N.Y. 2011) involved two customers of franchise restaurants in two states who were injured by serrated knives baked into sandwich bread which originated from a single source; *Kehr ex rel. Kehr v. Yamaha Motor Corp., U.S.A.*, 596 F. Supp. 2d 821 (S.D.N.Y. 2008) involved injuries to two plaintiffs due to alleged design defects in the Yamaha Rhino, a side-by-side all terrain vehicle, which caused it to be subject to rollovers.

5

designs. Plaintiffs reside in nineteen different states." *Addis v. Barnett Outdoors, LLC*, CASE NO. 8:16-CV-1424-T-30TBM, 2016 WL 4183461, at *1 (M.D. Fla. Aug. 8, 2016). The court in *Addis* rejected joinder because the plaintiffs' claims were "not transactionally related." *Id*. at *1. The situation is the same here.

Plaintiffs challenge *Addis*, pointing out that another nearly identical case in the Northern District of Texas is being handled differently and, in plaintiffs' view, more efficiently. (Opp'n at 143-44, citing *South v. Barnett Outdoors, LLC*, No. 3:16-cv-371-M (N.D. Tex. filed Feb. 10, 2016).) Plaintiffs argue that "this Court can deny Defendant's motion and allow joinder, which will almost certainly allow the cases to move forward in an expeditious manner, or grant Defendant's motion and head down the more costly, time-consuming, and less efficient road of separate cases." (*Id.* at 144, underlining in original.)[3] But the orders in the Texas case that granted leave to amend by adding plaintiffs (although denying with respect to two non-diverse plaintiffs) were non-document electronic orders that supply no reasoning for the court's action.[4]

Joinder of these five plaintiffs into the instant lawsuit is improper because the *two* requirements for joinder[5] are not met. Therefore, the Court grants defendant's motion to dismiss

---

[3] The Court notes that the efficiencies cited by plaintiffs can also be accomplished by seeking transfer of all separate cases to the docket of a single judge on the basis of "relatedness" under L.R. 3.1(b)(3), and further seeking consolidation of any such transferred cases for pretrial and discovery purposes, if not for trial (if appropriate). Additionally, and although not controlling, what plaintiffs' argument does not recognize is that, by filing one lawsuit instead of five, there is considerable loss of revenue to the public coffers, since only one filing fee will be deposited for what is in reality five separate lawsuits. If other parties were to attempt this tactic (and there is no guarantee that there are not more potential plaintiffs in the wings for this very lawsuit), the statistics for the court as a whole would underrepresent the actual caseload (and work involved) and, potentially, affect the number of judges assigned to this district (since that number is based on the number of overall cases handled) and funding (which is also tied to statistics). This Court must be vigilant with regard to these matters so as to avoid turning what might be convenient in the short run for an individual case into a pattern or practice that would, in the long run, be damaging to the court as an institution. This is especially true where, as here, there are other suitable alternatives to accomplish efficiencies.

[4] This Court has access to the PACER docket of the Texas court and can take judicial notice of these public records.

[5] Since the five plaintiffs' claims do not "aris[e] out of the same transaction, occurrence, or series of transactions or occurrences[,]" the Court need not decide whether there is a common question of law or fact.

all plaintiffs but the original plaintiff, without prejudice. That said, the FAC will continue to control as to plaintiff Queen,[6] although the remaining plaintiffs and allegations pertaining to them are all dismissed.

## B. Lack of Subject Matter Jurisdiction

The second issue raised by defendant's motion is whether plaintiff Queen's complaint sufficiently alleges facts in support of diversity jurisdiction, in particular, the requisite amount-in-controversy.[7] Defendant relies on a summary of medical bills that was created by plaintiff's counsel, which shows Queen's medical bills to be only $13,517.19. (*See* Doc. No. 12-1 at 167.)

The burden is on the party invoking federal jurisdiction to "demonstrat[e] by competent proof that the complete-diversity and amount-in-controversy requirements are met." *Evanston Ins. Co. v. Hous. Auth. of Somerset*, 658 F. App'x 799, 802 (6th Cir. 2016) (quoting *Cleveland Hous. Renewal Project v. Deutsche Bank Trust Co.*, 621 F.3d 554, 559 (6th Cir. 2010)).[8] In the context of a motion to dismiss due to failure to satisfy the amount-in-controversy, "the sum claimed by the plaintiff controls if the claim is apparently made in good faith." *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288-89, 58 S. Ct. 586, 82 L. Ed. 845 (1938); *Kovacs v. Chesley*, 406

---

[6] The FAC did not just add four plaintiffs and allegations relating to each. It also modified the allegations relating to Queen's claim. Therefore, it will continue to be the operative complaint with respect to Queen.

[7] Even if all five plaintiffs were allowed to remain in this lawsuit, they could not aggregate their damages to meet the amount-in-controversy. In *Everett v. Verizon Wireless, Inc.*, 460 F.3d 818, 822 (6th Cir. 2006), the court held that "[t]o satisfy the amount-in-controversy requirement at least one plaintiff's claim must independently meet the amount-in-controversy specification." (citation omitted). "While a single plaintiff may aggregate the value of her claims against a defendant to meet the amount-in-controversy requirement, even when those claims share nothing in common besides the identity of the parties, the same is not true with respect to multiple plaintiffs." *Id.* (emphasis and citation omitted). "Only when 'two or more plaintiffs unite to enforce a single title or right in which they have a common and undivided interest' may federal courts rely on the aggregate amount of these claims to satisfy this requirement." *Id.* (quoting *Snyder v. Harris*, 394 U.S. 332, 335, 89 S. Ct. 1053, 22 L. Ed. 2d 319 (1969) (further citation omitted)). The Seventh Circuit has noted that, "[o]nce one plaintiff satisfies the amount-in-controversy requirement for diversity jurisdiction, the other plaintiffs come in under the court's supplemental jurisdiction regardless of whether their individual claims satisfy the requirements of § 1332." *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 511 (7th Cir. 2006) (citations omitted).

[8] There is no dispute that complete diversity exists.

F.3d 393, 395 (6th Cir. 2005) (noting that *St. Paul Mercury* established the "legal certainty test," under which "[i]t must appear . . . that the claim is really for less than the jurisdictional amount to justify dismissal.") (emphasis omitted). But, "[w]here a party alleges excessive damages beyond any reasonable expectation of recovery, jurisdiction does not attach." *Jennings v. Ford Motor Co.*, 56 F.3d 64 (Table), 1995 WL 299049, at *1 (6th Cir. May 16, 1995) (citation omitted).

In the FAC, Queen alleges "actual and compensatory damages of at least $250,000, and exemplary damages . . . not less than $250,000." (FAC ¶ 64.) Defendant argues that this is excessive and cannot be asserted in good faith. That may or may not be true, but it does not address whether plaintiff can arguably meet the jurisdictional amount of $75,000. Defendant relies on the fact that Queen's medical expenses appear to be only about $13,500. But Queen also asserts pain and suffering, emotional distress and mental anguish, lost wages, disfigurement, deformity, and scarring. If "state law at least arguably permits the type of damages claimed, the amount in controversy requirement will be satisfied even if it is unlikely that the plaintiff can recover an amount exceeding the jurisdictional requirement." *Kovacs*, 406 F.3d at 397 (citation omitted).

Defendant has not argued that the *types* of damages claimed are not permitted, and it is not a "legal certainty" at this juncture that Queen will be unable to prove the *jurisdictional* amount of damages.[9] Accordingly, to the extent defendant's motion seeks dismissal of Queen's complaint for lack of subject matter jurisdiction, it is denied.

**IT IS SO ORDERED**.

Dated: April 14, 2017

                                                        **HONORABLE SARA LIOI**
                                                        **UNITED STATES DISTRICT JUDGE**

---

[9] Having dismissed the four misjoined plaintiffs, this Court expresses no opinion or ruling with respect to whether any or all of them could establish the amount-in-controversy.